IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MILDRED K. COE, individually
and as Executrix of the
Estate of WILLIAM W. COE, JR.,

       Plaintiff,

v.                                 Civil Action No. 5:04CV8
                                        (STAMP)

JUDITH PERZANOWSKI and
LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

       Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO SUBSTITUTE AND**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.  Background

The plaintiffs, Mildred K. Coe and William W. Coe, Jr., originally filed this action in the Circuit Court for Ohio County, West Virginia, against Judith P. Perzanowski ("Perzanowski") to recover damages arising out of a motor vehicle accident that occurred on Interstate 70 in Ohio County, West Virginia. The plaintiffs and Perzanowski then reached a settlement agreement that included the release of all claims against Perzanowski on August 29, 2003.[1] On October 1, 2003, plaintiff Mr. Coe died, and Mrs. Coe filed in the state court a motion to substitute and a motion

_____

[1] An agreed partial dismissal order was entered in state court on January 28, 2004. An identical order was entered by this Court on November 16, 2004. The order dismissed with prejudice all claims against Perzanowski.

for leave to amend her complaint to include as a defendant Liberty Mutual Fire Insurance ("Liberty Mutual").

On December 22, 2003, the state court granted the plaintiff's request to amend her complaint, but refrained from ruling on the plaintiff's motion to substitute until defendant Liberty Mutual was properly joined pursuant to West Virginia's rules of procedure.[2] On January 20, 2004, defendants filed a notice of removal before any determination was made on the plaintiff's motion to substitute.[3]

## II. Facts

As stated in this Court's previous order denying the plaintiff's motion to remand, the plaintiff alleges claims against Liberty Mutual under the West Virginia Unfair Claims Settlement Practices Act ("UTPA"), W. Va. Code § 33-11-4. Plaintiff seeks compensatory damages, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs.

Currently before this Court is Liberty Mutual's motion for summary judgment on claims made by Mrs. Coe as an individual and in

---

[2] The parties have filed no further motions or memoranda in response to the plaintiff's motion to substitute. This Court addresses plaintiff's motion below.

[3] Despite the alleged settlement agreement between the plaintiffs and Perzanowski, Perzanowski joined Liberty Mutual's notice of removal. As stated above, a partial dismissal order was entered in state and federal court shortly after the notice of removal had been filed.

her capacity as a representative of Mr. Coe's estate.[4]   The plaintiff has filed a response, the defendant has filed a reply and the motion is now ripe for a determination.

## III.   Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.   See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."   Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

_____

[4] Upon review of state and federal dockets related to this action, it appears to this Court that the plaintiff's motion to substitute was never officially ruled upon.   However, the plaintiff's amended complaint eliminates Mr. Coe as an individual plaintiff, and states that Mrs. Coe appears "individually and as Executrix of the Estate of William W. Coe, Jr."   Once Liberty Mutual was made a party to this action, it did not object to the plaintiff's motion for substitution.   Accordingly, the plaintiff's motion for substitution is GRANTED, and this action proceeds accordingly.

However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page</u>

Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992).  In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

### A.  Motion Ripe for Decision

Plaintiff indicated in her response to the defendant's motion for summary judgment that she had filed motions for sanctions regarding the defendant's conduct during discovery.  The plaintiff asked this Court to defer ruling on the defendant's motion for summary judgment until plaintiff obtained additional depositions and filed a supplemental memorandum.  This Court referred plaintiff's motions for sanctions to United States Magistrate Judge James E. Seibert, who conducted a motions hearing and entered an order on April 7, 2005.

On April 12, 2005, this Court entered an amended scheduling order allowing parties additional discovery.  On May 18, 2005, this Court affirmed the magistrate judge's order compelling certain discovery and granting monetary sanctions against the defendant.  Currently pending before this Court is a second motion to compel production of further documents as well as recorded statements of Perzanowski.  In addition, the plaintiff has filed another motion for sanctions against defendant's counsel.

Notwithstanding the pending motions, this Court finds that the plaintiff has had sufficient opportunity for discovery for purposes of Liberty Mutual's pending motion for summary judgment.[5] Accordingly, this Court turns to the merits of the defendant's summary judgment motion.

B.    Summary Judgment as to Claims Made by or for Mr. Coe

The defendant argues that Mr. Coe's claims against Liberty Mutual based on the UTPA do not survive his death pursuant to § 55-7-8a of the West Virginia Code.  The plaintiff responds that the defendant did not raise this defense pursuant to § 55-7-8a until the filing of its motion for summary judgment, thereby waiving any right to such a defense.  The plaintiff argues further that, even if the defendant retained a defense under § 55-7-8a, Mr. Coe's claim survives his death because it is a personal injury action within the meaning of § 55-7-8a.

As a preliminary matter, the defendant has not waived its ability to challenge Mr. Coe's cause of action on the basis of § 55-7-8a.  As the defendant notes in its reply, Liberty Mutual filed a timely answer to the plaintiff's amended complaint asserting that the plaintiff's action was barred for failure to

---

[5] This Court's April 12, 2005 amended scheduling order gave the parties additional discovery time.  Pursuant to this order, discovery was completed on July 11, 2005.  In plaintiff's response to defendant's motion for summary judgment, the plaintiff indicated an intention to file supplemental material as discovery progressed. No such material has been filed to date.

state a claim. <u>See</u> Answer ¶ 14. The plaintiff admits that Mr. Coe's bad faith claims could not survive under common law, and survive, if at all, by force of statute. Resp. at 16. Liberty Mutual's central argument against Mr. Coe's claims is that the statute is inapplicable. Accordingly, the affirmative defense supplied by Liberty Mutual's answer, while general, was sufficient to preserve this issue for summary judgment purposes.

This Court turns now to the plaintiff's contention that § 55-7-8a specifically authorizes UTPA claims to survive Mr. Coe's death. Section 55-7-8a provides in pertinent part:

> In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive: and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

As stated above, the plaintiff asserts only that Mr. Coe's UTPA claim falls within the meaning of § 55-7-8a because it is a personal injury claim. This Court disagrees.

In <u>Wilt v. State</u>, 203 W. Va. 165 (1998), the West Virginia Supreme Court of Appeals considered whether UTPA claims could be viewed as personal injury claims. <u>Id.</u> at 170-71. There, the court determined that a one-year statute of limitations applied, in part, because UTPA claims were not personal injury claims. <u>Id.</u> at 171. The plaintiff argues that <u>Wilt</u> is inapplicable because it concerns a statute of limitation issue rather than the survivability problem

at issue in this case. However, in the course of determining that the one-year statute of limitation applies to UTPA claims, the Wilt court recognizes that UTPA claims are not included in the torts enumerated in § 55-7-8a. Id. at 170. Thus, the Wilt definition of UTPA claims places them beyond the purview of West Virginia's survivability statute.

In finding that Mr. Coe's causes of action do not survive his death, this Court finds support in Keeney v. Infinity Insurance Company, 231 F. Supp. 2d 488 (S.D. W. Va. 2002). In Keeney, Judge Haden relied upon Wilt to hold that, upon the death of the plaintiff, a UTPA claim "does not survive at common law and is not listed as an action that survives under Section 55-7-8a." Keeney at 492. Accordingly, Mr. Coe's claims do not survive his death and this Court must grant the defendant's motion for summary judgment as it pertains to all claims filed by Mr. Coe and Mrs. Coe in her capacity as Executrix of the Estate of Mr. Coe.

C. Summary Judgment as to Claims Made by Mrs. Coe in her Individual Capacity

This Court turns now to Mrs. Coe's claims made against Liberty Mutual in her individual capacity for alleged violations of § 33-11-4(9). Specifically, Mrs. Coe claims that Liberty Mutual (1) failed to act reasonably promptly upon claim communications, (2) failed to adopt and implement reasonable standards for the prompt investigation of claims, (3) refused to pay claims before

conducting a reasonable investigation, (4) failed to make a good faith effort in settling the plaintiff's claims when liability was reasonably clear, and (5) compelled the plaintiff to litigate by offering substantially less than amounts ultimately recovered. In addition, Mrs. Coe's claims include requests for punitive damages, attorneys' fees and costs. Liberty Mutual requests summary judgment in its favor on each of these claims. This Court discusses each claim in turn.

      1.   <u>Failure to Act Reasonably Promptly</u>

      Section 33-11-4(9)(b) provides that unfair claim settlement practices include "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." In its motion for summary judgment, Liberty Mutual provides a table of communications detailing the dates on which it received written claim communications and the dates on which it responded to each. <u>Id.</u> at 17. The table indicates that Liberty Mutual responded to each complaint in less than a month. The plaintiff responds that the correspondences selected by Liberty Mutual for its table are not representative of the defendant's communications with the Coes. The plaintiff argues that Liberty Mutual failed to contact the Coes after Liberty Mutual was advised of the underlying accident. The plaintiff further contends that, while the defendant's table shows that Liberty Mutual may have acknowledged certain communications in a timely manner, it is also

required by statute to "act . . . upon" those communications. Pl.'s Resp. at 18. The plaintiff maintains Liberty Mutual failed to meaningfully act.

This Court finds that in this case § 33-11-4(9)(b) requires an insurance company to do more than merely acknowledge a communication made with respect to a claim. It must act upon those communications in a reasonable manner. At the very least, this Court finds that there are several genuine issues of material fact concerning the reasonableness of Liberty Mutual's response to certain communications made by the Coes and their counsel.

For example, the plaintiff maintains that Mrs. Coe's counsel contacted Liberty Mutual on January 8, 2002 seeking an explanation of the defendant's determination of liability on the underlying accident. Def.'s Mot. Summ. J., Ex. 8. Whether or not Liberty Mutual's response on February 6, 2002, is a timely response that acts upon the January 8, 2002 communication is a disputed fact that is best determined by a jury. Similarly, on July 9, 2002, plaintiff's counsel contends he submitted a demand letter to Liberty Mutual, but that the defendant did not substantively respond to the plaintiff's settlement offer for another four months. Pl.'s Resp. at 19. Again, a jury should best determine whether Liberty Mutual's July 24, 2002 response and subsequent settlement offer were sufficient under the UTPA.

Accordingly, the defendant's motion for summary judgment as to Mrs. Coe's claim that Liberty Mutual failed to act reasonably promptly must be denied.

2.   Failure to Adopt Reasonable Standards

Section 33-11-4(9)(c) provides that unfair claim settlement practices includes "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies."  In its motion for summary judgment, Liberty Mutual admits that the liability investigation of the Coes' claims took approximately one year to resolve.  Def.'s Mot. Summ. J. at 18.  However, Liberty Mutual maintains that it was "not to blame for this duration of time . . ."  Id.  In support of its contention, the defendant argues it had no way of contacting the Coes, that it ultimately did contact the Coes within a week of first learning their identities and that it had to wait ten months from the time it requested an interview with the Coes until the time the Coes made themselves available for interviews.  Id.

The plaintiff rejects Liberty Mutual's contention that it had no way of contacting the Coes, maintaining that the Coes, themselves, contacted Liberty Mutual.  Pl.'s Resp. at 18 and 20. The plaintiff further argues that Liberty Mutual did not contact the Coes until four weeks after the underlying accident.  Pl.'s Resp. at 20.  Furthermore, plaintiff contends that Liberty Mutual had immediate access to the police report from the underlying

accident that provided no facts suggesting that the Coes were negligent. Plaintiff asserts that the lengthy resolution of their claims is unreasonable in light of the police report.

By statute, it is Liberty Mutual's duty to adopt standards for a prompt investigation. At the very least, this Court finds that there is a genuine issue of material fact as to whether Liberty Mutual's standards for investigation were reasonable in this case. This Court finds that this question of reasonableness is best left to a jury, and therefore, summary judgment as to this issue must be denied.

     3.   <u>Refusal to Pay Claims</u>

Section 33-11-4(9)(d) provides that unfair claim settlement practices includes "refusing to pay claims without conducting a <u>reasonable investigation</u> based upon <u>all available information</u>." <u>Id.</u> (emphasis added). In its motion for summary judgment, Liberty Mutual argues that it never "refused" to pay the Coes' claims. The plaintiff acknowledges that Liberty Mutual never "denied" the Coes' claims, but it argues that the UTPA prohibits an insurance company from refusing to pay a claim where all available information indicates the claim should be paid. Specifically, the plaintiff argues that Liberty Mutual created a liability issue where all available evidence indicated that Perzanowski, Liberty Mutual's insured, was 100% liable.

In <u>Jackson v. State Farm Mutual Automobile Insurance Company</u>, 600 S.E.2d 346 (W. Va. 2004), the West Virginia Supreme Court of Appeals held that "the reasonableness of an insurer's investigation is a jury question because jurors can often draw different conclusions from the evidence." <u>Id.</u> at 353. Thus, issues over when liability is reasonably clear, when an insurer is unreasonable for refusing to pay a claim at a particular point in time and whether a reasonable investigation has been conducted based upon all available information are more appropriate for jury determination.

The plaintiff has presented evidence in the form of letters and affidavits that suggest the Coes were in contact with Liberty Mutual shortly after the accident occurred. The plaintiff has also presented the police report, and claims that the document indicates that liability was not an issue. Liberty Mutual, by its own admission, has indicated that it took nearly a year to determine liability for purposes of settling the Coes' claims. Accordingly, this Court finds that there is a genuine issue of material fact as to whether Liberty Mutual violated § 33-11-4(9)(d), and summary judgment must be denied on this point.

4. <u>Good Faith Effort to Settle Claims</u>

Section 33-11-4(9)(f) provides that unfair claim settlement practices include "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability

13

has become reasonably clear." A determination of whether liability is "reasonably clear" is ordinarily a question of fact to be presented to a jury. <u>Jackson</u> at 352-53. The defendant argues that <u>Jackson</u> does not apply to Mrs. Coe's action because liability, as a matter of law, was not reasonably clear. Liberty Mutual contends that its investigation and attempt to settle the Coes' claims were merely routine settlement negotiations.

As stated above, the plaintiff has provided evidence in the form of a police investigation, letters, and testimony which could indicate that liability was reasonably clear. In light of the materials submitted by both parties, this Court finds that whether liability was "reasonably clear" presents a genuine issue of material fact best left for a jury to decide. Therefore, summary judgment on this point must be denied.

5. <u>Whether Defendant Compelled Litigation</u>

Section 33-11-4(9)(g) provides that unfair claim settlement practices include "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the <u>insureds</u>, when the <u>insureds</u> have made claims for amounts reasonably similar to the amounts ultimately recovered." <u>Id.</u> (emphasis added). The defendant argues that because the Coes were not the defendant's "insureds," the provision is inapplicable to Mrs. Coe's action. The plaintiff responds that the provision

applies to third-party claimants who are treated as insureds by the insurance company.[6]   Unfortunately, neither party provides authority supporting its position.

West Virginia's UTPA does not specifically define "insured." Ordinary rules of statutory construction require a court to give a term its plain meaning as determined by examination of the statutory "language, structure, and purpose." <u>United States v. Horton</u>, 321 F.3d 476, 479 (4th Cir.)(2003).  A court should assume that "identical words used in different parts of the same act are intended to have the same meaning." <u>Sorenson v. Sec'y of Treasury of U.S.</u>, 475 U.S. 851, 860.  In addition, a court should avoid a reading that renders some words redundant or superfluous. <u>Platt v. Union Pac. R. Co.</u>, 99 U.S. 48, 58-59 (1887); <u>Gustafson v. Alloyd Co., Inc.</u>, 513 U.S. 561, 563 (1995).

Applying these principles, the UTPA's use of "insured" in sister provisions is instructive.  For example, § 33-11-4(9)(k) states that bad faith includes "making known to insureds <u>or</u> claimants a policy of appealing from arbitration."  By distinguishing between insureds and claimants, the Act narrows the definition of insureds to exclude non-insured claimants.  Third-party "claimants" are more appropriately labeled as claimants than

---

    [6] The plaintiff cites the deposition of Shawn Mulvay, a Liberty Mutual employee, in which he indicates that there are no differences in the policies and procedures that the insurance adjuster follows based on whether it is a first party or third party claim.  Pl.'s Resp. Ex. 1; Mulvay Dep. at 55.

"insureds." Accordingly, the provision suggests that third-party claimants are not insureds within the meaning of this Act. Section 33-11-4(9)(l) creates the same distinction between insureds and claimants.

This Court also finds guidance in West Virginia's Uninsured Motorist Act, which is a separate, but related statute. <u>See</u> W. Va. Code § 33-6-31. Unlike the UTPA, the Uninsured Motorist Act defines "insured" as "the person named as such in the declaration of the policy or contract" as well as a spouse or relative in certain circumstances. W. Va. Code § 33-6-31(c). Without adopting the definition of West Virginia's Uninsured Motorist Act for use in the UTPA, this Court believes that the statutory definition of "insured" provides further support to the defendant's position that § 33-11-4(9)(g) is not applicable to a third-party claimant. The plaintiff has provided no evidence that the Coes are insured within the meaning of Perzanowski's contract with Liberty Mutual. Accordingly, this Court finds that § 33-11-4(9)(g) is inapplicable to the plaintiffs in this third-party bad faith action, and that the defendant's motion for summary judgment on this provision must be granted.

6. <u>Punitive Damages</u>

In response to a request to certify questions of law made by this Court, <u>Poling v. Motorists Mutual Insurance Company</u>, 450 S.E.2d 635 (W. Va. 1994), held that § 33-11-4(9) allows a plaintiff

to recover punitive damages.  There, the Supreme Court of Appeals determined that punitive damages were meant to "encourage good faith efforts at settlement," and stated:

> The mere fact that after months of delay and hassle the insurance company deigns to speak to the injured party and settles the case for the policy limits after realizing that the plaintiff is not going to accept some outlandish low-ball offer, does not automatically preclude the plaintiff from later bringing a bad faith action that includes a request for punitive damages.

Id. at 637.  However, Poling makes it clear that while punitive damages may be available, the plaintiff must show that the insurance company "willfully, maliciously, and intentionally delayed payment in order to attempt to obtain a less than just settlement."  Id.  The defendant argues that summary judgment is appropriate in this action because there is no evidence that Liberty Mutual willfully, maliciously and intentionally delayed the Coes' claims.  This Court disagrees.

Hayseeds, Inc. v. State Farm Fire & Casualty, 352 S.E. 73 (1986), held that the test for punitive damage liability was meant to be "a bright line standard, highly susceptible to summary judgment for the defendant."  Id. at 80-81.[7]  To survive, a plaintiff must introduce evidence of intentional injury, as opposed

---

[7] This Court recognizes that Hayseeds is not a third-party action, but the standard used in the Supreme Court of Appeal's Poling decision is the same.  In fact, Poling cites Berry v. Nationwide, which is not a third-party action for its standard.

to "negligence, lack of judgment, incompetence, or bureaucratic confusion." Id.

Berry v. Nationwide Mutual Fire Insurance Company, 381 S.E.2d 367 (W. Va. 1989), applied the willful, malicious and intentional standard, and found that a punitive damage instruction was appropriately given where an insurance inspector saw evidence of damage to a home, heard credible statements that such damage was the result of events covered by the insured's contract, and where the insurance company delayed the claim relying, in part, on a blast report that was unrelated to the claimant's property. Berry at 374-75.

In Shamblin, the court reversed an award of punitive damages, where an insurer insisted on its position regarding policy limits and there was a bona fide dispute as to what the applicable limits actually were. Furthermore, the court recognized that the insurance company made an offer to settle the case within what it contended to be the policy limits and paid an offer of judgment to the court. Accordingly, the court found that the requisite malice was missing from the insurer's actions.

Here, the plaintiff alleges that the insurance company made an issue out of liability where it had no evidence that liability was disputed. Indeed, Perzanowski's testimony as recorded in the police report, states:

I was traveling west on I-70 when I saw the cars in front of me, [sic] they looked like they were stopped. They

> looked like they were staggered. I hit my breaks and
> started sliding. I could see that I was going to hit
> them. I then hit them.

Def.'s Mot. Summ. J., Ex. 1. The plaintiff further argues that
Liberty Mutual made repeated "low-ball" settlement offers where it
knew the true value of the Coes' claim.

After reviewing the plaintiff's claim in light of the
standards for punitive damages, this Court finds that, at least at
this stage of the case, a jury could reasonably find that Liberty
Mutual acted with malice in denying the Coes' claim for nearly a
year. As stated in <u>Poling</u>, punitive damages are meant to encourage
good faith efforts toward settlement. <u>Id.</u> at 637. Where the
plaintiff has offered evidence that an insurance company has
unreasonably delayed settlement offers and negotiations, and where
the plaintiff has presented evidence that shows that liability was
relatively clear, the issue of punitive damages should survive a
summary judgment motion and Liberty Mutual's motion for summary
judgment on this point will be denied. This particular issue may
be addressed again as a trial motion matter upon receipt of more
detailed evidence. The manner in which punitive damages issues and
evidence should be presented at trial will be discussed with
counsel at the pretrial conference.

7.    <u>Attorneys' Fees and Costs</u>

The defendant argues that attorneys' fees and costs are
inappropriate in this action because Mrs. Coe testified that she

received the full amount of her settlement in the underlying action without a fee being deducted. The plaintiff responds by offering as evidence the testimony of Mrs. Coe's attorney, James Bordas, that indicates 40% was withheld from the settlement proceeds for attorneys' fees. Pl.'s Resp. at 27. Furthermore, the plaintiff notes that Mrs. Coe did not affirmatively state that she received her entire settlement, but responded to questions with "I don't know that." Id.

Experience teaches that plaintiffs generally pay for legal services rendered when the plaintiffs are in some way successful in resolving their claims. Further, this Court has no reason to believe that Mr. Bordas' deposition testimony is inaccurate.[8] Accordingly, summary judgment must be denied on the issue of attorneys' fees and costs.

## V. Conclusion

For the reasons stated above, the plaintiff's motion to substitute is hereby GRANTED, the defendant's motion for summary judgment as it applies to all claims made by or on behalf of Mr. Coe is hereby GRANTED. In addition, the defendant's motion for summary judgment on claims based on West Virginia Code § 33-11-4(9)(g) is GRANTED. Finally, the defendant's motion for

---

[8] This Court makes no determination at this time as to whether a 40% fee is a reasonable fee in this case.

summary judgment for claims based on all remaining grounds, for punitive damages and for attorneys' fees and costs is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    July 20, 2005

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE